UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


STARLETTE GORDON

VERSUS

THE STATE OF LOUISIANA, THROUGH
THE DEPARTMENT OF VETERANS
AFFAIRS AND JON SALTER

CIVIL ACTION

NUMBER 11-770-JJB-SCR


**RULING**

This matter is before the Court on the motions for partial summary judgment filed by the Defendants, State of Louisiana through Department of Veterans Affairs and Jon Salter ("Defendants").[1] Plaintiff Starlette Gordon ("Gordon" or "Plaintiff") has opposed the motions.[2] For the reasons which follow, the Court finds that the Defendants' motions for partial summary judgment should be granted.

## I. Factual Background

Plaintiff is an African-American female who was employed by the Department of Veterans Affairs and assigned to the Southeast Louisiana War Veterans Home ("the Home") in the classification of Chief Financial Officer ("CFO"). She contends that throughout her

---

[1] Rec. Doc. Nos. 7 & 9.

[2] Rec. Doc. No. 19.

Doc#48088

employment with Defendants, she was subjected to a hostile work environment, discrimination, and retaliation based on her race. Plaintiff filed several EEOC charges and often complained at work about the alleged unlawful treatment she believed she was receiving.

The Defendants claim Gordon was a problem employee who was ultimately issued a Notice of Termination letter on September 16, 2009 for the following reasons: failure to comply with HIPAA laws and LDVA regulations; inattention to detail resulting in the risk of loss in revenue; failure to effectively manage the Fiscal Department; and creation of a hostile work environment as fully detailed in the notice. The Defendants contend Plaintiff was often disciplined and ultimately terminated for legitimate business reasons and that the same decision would have been made regardless of Plaintiff's race. Further, Defendants show that they replaced Plaintiff with an employee of the same race.

Gordon appealed her termination to the Civil Service Commission and a settlement was reached on November 17, 2009. Plaintiff then filed this lawsuit on September 16, 2011, alleging race discrimination, harassment and retaliation. The Defendants removed the suit to federal court on November 14, 2011.

## II.  Law and Analysis

### A.  Summary Judgment Standard

Summary judgment should be granted if the record, taken as a

whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[4]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[5]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[6]

If the moving party meets this burden, Rule 56 (c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which

---

[3]Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996);  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[4]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[5]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[6]*Id.* at 1075.

there is a genuine issue for trial.[7]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[8]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[9]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[11]

**B.  Motion for Partial Summary Judgment on EEOC Charge No. 461-2008-01797**

Defendants move for partial summary judgment on any allegations set forth in EEOC Charge No. 461-2008-01797 arguing these claims are prescribed because Plaintiff failed to file suit on these claims within ninety days of receiving her Notice of Right to Sue letter.  It appears Plaintiff does not dispute this fact

---

[7]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[8]*Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[9]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[10]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

because her opposition states that this suit involves her last two EEOC Charges.[12]  To the extent any of these allegations are alleged in the present lawsuit, summary judgment is granted on these claims and they are dismissed with prejudice.

**C.   Partial Summary Judgment on Remaining EEOC Charges**

Plaintiff claims Defendants have violated Title VII of the Civil Rights Act of 1964[13] by subjecting her to race discrimination, harassment based on race, and retaliation.  Plaintiff also asserts a claim of emotional distress under Louisiana law.

**1.   Race Discrimination**

A claim of race discrimination is analyzed using the traditional burden-shifting rules of *McDonnell Douglas Corp. v. Green*.[14] To survive summary judgment in a race discrimination case, a plaintiff must first establish a *prima facie* case showing she (1) is a member of a protected class; (2) was qualified for the position held; (3) was subject to an adverse employment action, and (4) was "treated differently from others similarly situated."[15] The plaintiff has the burden of demonstrating that "the employment actions at issue were taken under nearly identical circumstances."[16]

---

[12]Rec. Doc. No. 19, p. 1.

[13]42 U.S.C. § 2000e, *et. seq.*

[14]411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[15]*Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005).

[16]*Turner v. Kan. City S. Ry.*, 675 F.3d 887, 893 (5th Cir. 2012).

Also, "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable violation histories."[17]

Plaintiff contends she was treated less favorably than two white comparators. First, she argues her supervisor Paul Heistand is similarly situated and suffered less harsh discipline under similar circumstances. Second, she contends her leave slips were treated less favorably than those of white co-worker Sonya Aucoin.

### a.   Paul Heistand

The Defendants argue that Plaintiff cannot make a *prima facie* case for race discrimination because Paul Heistand is not a similarly situated employee and the violations committed are in no way comparable. Plaintiff contends that she and Heistand are similarly situated since they were both management employees and both ultimately answerable to the same person, Jon Salter.

The Court finds that Heistand is not a valid comparator since he was Plaintiff's supervisor. Simply because Jon Salter was Heistand's supervisor, and Salter ultimately supervised and terminated the Plaintiff, does not equate to Plaintiff and Heistand sharing the same supervisor. Further, the record is clear that

---

[17] *Id.*

Heistand and Plaintiff did not have the same job duties.  Plaintiff was the CFO of the Home responsible for the Fiscal Department only while Heistand supervised five department heads at the Home. Salter was only supervising Plaintiff after she filed a grievance and a criminal complaint against Heistand.  Salter removed her from Heistand's supervision to avoid further allegations.  In no way were Plaintiff and Heistand on the same employment level simply because, in the end, Salter supervised Plaintiff.  Thus, Plaintiff has failed to present summary judgment evidence that she and Heistand "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."

The record also indicates the violations committed by Plaintiff and Heistand were not of a similar nature.  While the Plaintiff was repeatedly counseled for various work performance deficiencies which included speaking negatively and critically of her co-workers, Heistand was disciplined only once for one isolated incident of allegedly using a curse word in his dealings with Plaintiff.  As the Fifth Circuit has stated, "critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."[18]  Plaintiff has failed to present summary judgment evidence that the violations

---

[18]*Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2001).

at issue with respect to Heistand were "nearly identical."

### b.   Sonya Aucoin

Plaintiff also alleges she was required to provide a doctor's excuse for sick leave on one occasion while others similarly situated did not, and that she was required to have her leave slips signed by her supervisor while physically present although others were allowed to submit leave slips to the supervisor's mailbox.

Plaintiff's own deposition testimony belies her first allegation. She testified that she knew of no employees other than her own subordinates allowed to submit doctor's excuses by copy or fax.[19] Plaintiff has failed to create a genuine issue of material fact on this point.

Plaintiff states in her opposition that she is "personally aware that Ms. Sandra Aucoin, a White department head, left leave slips in Mr. Heistand's mailbox for approval."[20]   However, Plaintiff's deposition testimony and the pictures taken by Plaintiff and submitted as evidence reveal that she only saw approved leave slips placed in Aucoin's mailbox, not that Aucoin left unapproved requests in Heistand's mailbox. There is no summary judgment evidence, other than Plaintiff's assumption, that this employee or any others were allowed to submit leave slips to Heistand's mailbox. Furthermore, Sonya Aucoin averred in her

---

[19]Rec. Doc. No. 9-28, p. 62.

[20]Rec. Doc. No. 19, p. 3, citing Plaintiff's Affidavit, Exhibit 1, as evidence.

Affidavit that she has never submitted a leave slip to Heistand's mailbox.[21]  This does not create a genuine issue of material fact, and Plaintiff has failed to present a *prima facie* case as to this employee as well.

### c.  Legitimate Non-Discriminatory Reasons

The Defendants contend that even if Plaintiff could establish a *prima facie* case of race discrimination, Plaintiff cannot rebut the evidence that Defendants had legitimate, non-discriminatory reasons for the disciplinary actions taken against her.  While Plaintiff clearly disputes the work performance deficiencies alleged by the Defendants, she fails to create a genuine issue of material fact.  The record is clear that the Plaintiff was counseled repeatedly for numerous work performance and attitude issues which included untimely processing of payments and paperwork, failing to return phone calls, exhibiting poor judgment when discussing work matters, lack of communication with her staff, creating a negative work environment, unscheduled and unapproved absences, and improper internet usage during work hours.

Plaintiff has failed to produce summary judgment evidence such that a reasonable fact finder could conclude that the Defendants' proffered reasons are false or a pretext for race discrimination. Furthermore, "unsupported disagreements with an employer's

---

[21]Rec. Doc. No. 9-4.

performance assessment are insufficient to demonstrate pretext."[22] Also, the Court notes that the Defendants replaced Plaintiff with another African-American female which, while not dispositive, also suggests a lack of racial animus in the Defendants' employment decisions regarding the Plaintiff.

The Court finds that Plaintiff has failed to present a *prima facie* case of race discrimination. The Court also finds that even if Plaintiff could set forth a *prima facie* case of race discrimination, she has failed to rebut the Defendants' proffered legitimate, non-discriminatory reasons for the decisions or offer any evidence that these reasons are a pretext for race discrimination. Therefore, Defendants are entitled to summary judgment on this claim.

### 2.   Harassment Based on Race

Plaintiff also contends she was subjected to a hostile work environment because of her race. A claim of hostile work environment requires the plaintiff to show that she: "1) belongs to a protected group; 2) was subjected to unwelcome harassment; 3) the harassment complained of was based on race; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."[23]   For a work

---

[22] *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 325 (5th Cir. 2002).

[23] *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005).

environment to be considered sufficiently hostile, a court must consider all relevant circumstances.[24]  Such circumstances include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[25]

Plaintiff contends Heistand cursed at her during a verbal counseling and that he referred to her as a "black bitch" on at least one occasion.  Plaintiff also claims she heard the term "black bitch" more than once while at work but could not recall precisely what was said each time ("black bitch" or "bitch").  Plaintiff concedes she has no evidence other than her own testimony to support these allegations.  While all of the Defendants' submitted evidence reveals no other person at the Home heard Heistand use these terms, the Court will assume for the sake of analysis that the allegation is true.

The Defendants contend, and the Court agrees, that even if Plaintiff heard Heistand use this term five times over the past three years, it is not sufficiently severe or pervasive such that it satisfies Plaintiff's *prima facie* case.  In *Frazier v. Sabine River Authority State of Louisiana*, Frazier alleged that his co-workers plotted to "set him up" and that the words "nigger" and

---

[24] *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

[25] *Id.*

"Negreet" were used in Frazier's presence and there was an alleged noose gesture.[26]   The Fifth Circuit affirmed the district court's "well-reasoned conclusion that these instances were isolated and not severe or pervasive enough to support a hostile work environment claim."[27]   The court continued that Frazier had failed to present "concrete examples" to support his allegations that the actions taken against him were based on race.[28]

The analysis and reasoning in *Frazier* applies to the case before the Court.  Plaintiff's only evidence to support that she was subjected to a hostile work environment is her own subjective belief.  Plaintiff's belief that something is true while a plethora of evidence to the contrary exists in the record does not create a genuine issue of material fact in this case.  Even taking Plaintiff's allegations as true, the allegations set forth do not rise to the level of severe or pervasive as a matter of law but constitute at most an occasional offensive utterance.

Plaintiff also fails to establish that her employer knew of the alleged harassment and failed to take prompt remedial action. The Fifth Circuit has held that "[t]o constitute 'prompt remedial action,' an employer's response to a harassment complaint must be

---

[26]2013 WL 363121 (5th Cir. Jan. 30, 2013).

[27]*Id.* at *4.

[28]*Id.*

'reasonably calculated' to end the harassment."[29]  To be reasonably calculated to end harassment, "an employer's actions need not end the harassment instantly."[30]  "Likewise, an employer need not impose the most severe punishment to comply with Title VII."[31]

After Plaintiff filed a grievance against Heistand, Jon Salter began overseeing Plaintiff's department while he investigated the matter.  The Defendants also issued a response to Plaintiff's grievance after investigation and consideration of the allegations.  Plaintiff then filed a grievance against Salter, and she was transferred to headquarters during the investigation of these claims.  Defendants again issued a response to Plaintiff's grievance against Salter after investigation and consideration.  Thus, the evidence does not support a finding that the Defendants failed to take prompt remedial action.  Each time Plaintiff complained of harassment by a supervisor, she was removed from that supervisor's supervision even though the Defendants found no merit to Plaintiff's allegations.  The Court finds that the Defendants took prompt remedial action to end Plaintiff's alleged harassment which was "reasonably calculated" to end such harassment.

Plaintiff has failed to establish a *prima facie* case of

---

[29] *Kreamer v. Henry's Towing*, 150 Fed. Appx. 378, 382, 2005 WL 2705802, *4 (5th Cir. Oct. 21, 2005), quoting *Skidmore v. Precision Printing & Packaging*, 188 F.3d 606, 615 (5th Cir. 1999).

[30] *Id.*, citing *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 (5th Cir. 1987).

[31] *Id.*, citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992).

harassment based on race with sufficient summary judgment evidence. Therefore, the Defendants are entitled to summary judgment on Plaintiff's claims of harassment based on race.

### 3.   Retaliation

Plaintiff claims she was retaliated against in violation of Title VII for filing EEOC charges while employed at the Home. EEOC Charge No. 461-2009-01996 alleges that Plaintiff's reduction in pay resulting in a two day suspension was in retaliation for previously filing EEOC Charge No. 461-2008-01797.   Plaintiff's second claim of retaliation found in EEOC Charge No. 461-2009-02085 alleges Jon Salter terminated Plaintiff in retaliation for her protected activity of filing charges with the EEOC.

To survive summary judgment on a Title VII retaliation claim, the plaintiff must establish that: (1) she participated in a protected activity; (2) she suffered an adverse employment action, and (3) there was a causal connection between her protected conduct and the adverse employment action.[32]   Plaintiff has clearly satisfied the first two requirements under this analysis.   The Court turns to a discussion of the causal requirement on each of Plaintiff's retaliation claims.

The Fifth Circuit has noted that, "[w]ithout direct evidence,

---

[32]*Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

the causation element can be difficult to prove."[33]  In analyzing this prong of the retaliation test, "[t]here are three indicia of causation: (1) the absence of any reference to the conduct at issue in the employee's disciplinary record, (2) deviation from the employer's customary 'policy and procedures in terminating the employee,' and (3) temporal proximity between the termination and protected conduct."[34]  "A *prima facie* case can, in some instances, be made on temporal proximity alone if the protected act and the termination are 'very close in time.'"[35] The Fifth Circuit has noted more specifically that "a time lapse of up to four months between the protected activity and the employee's discharge has been sufficient to establish a *prima facie* case."[36]  However, the Fifth Circuit has also held "that a five-month time period was not sufficient."[37]

### a.   EEOC Charge No. 461-2009-01996

The record is clear that this claim of retaliation occurred more than five months after EEOC Charge No. 461-2008-01797 was filed.  As a matter of law, this time period is insufficient to

---

[33]*Pryor v. MD Anderson Cancer Center*, 495 Fed. Appx. 544, 547, 2012 WL 5360153, *3 (5th Cir. Nov. 1, 2012), citing *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994).

[34]*Id.*, quoting *Nowlin*, 33 F.3d at 508.

[35]*Id.*, quoting *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007).

[36]*Id.* at 548, citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

[37]*Id.*, citing *Raggs v. Miss. Power & Light*, 278 F.3d 463, 471-72 (5th Cir. 2002).

establish causation to make a *prima facie* case of retaliation.  In her opposition, Plaintiff argues that "the calendar is not the measure; rather, the conduct of Mr. Heistand is."[38]   However, Plaintiff fails to distinguish the cases cited by the Defendants on this issue or offer any authority for her position.  The Court finds that Plaintiff has failed to present a *prima facie* case of retaliation on this charge.

### b.    EEOC Charge No. 461-2009-02085

Plaintiff alleges in this charge that Salter retaliated against her for filing the previous EEOC charge against Heistand by placing her on leave and then issuing a Notice of Consideration of Termination letter.  The Defendants do not contest that Plaintiff can satisfy a *prima facie* case of retaliation on this charge. However, the Defendants contend they have presented summary judgment evidence of legitimate, non-discriminatory business reasons for the actions and that Plaintiff cannot show a discriminatory pretext for the actions taken.

The Defendants contend that Plaintiff breached HIPAA guidelines by taking confidential Veterans' information out of the Home despite receiving training in HIPAA compliance.  Plaintiff also violated HIPAA by forwarding an e-mail to a third party with an attachment which contained confidential information.  Plaintiff was verbally counseled on these occurrences and re-trained by the

---

[38]Rec. Doc. No. 19, p. 6.

Defendants in HIPAA compliance.

The Defendants also present evidence that Plaintiff was inattentive to detail which caused the risk of loss of revenue on several occasions. Defendants submit evidence that Plaintiff was not an effective manager of the Fiscal Department by failing to close out patients' accounts timely. Defendants contend when Plaintiff's staff requested help in completing tasks, Plaintiff ignored them, delayed responding, or refused to help. Further, Defendants show that the Plaintiff sent inaccurate numbers to headquarters more than once. The record reflects that this ineffective management resulted in the Fiscal Department receiving several problematic reviews. In fact, Auditor Donna Burn went to the Home for numerous visits to re-train the Plaintiff on the department's deficiencies. When Burn returned months later, she discovered that the problems previously addressed were still unresolved. Defendants contend that every time they attempted to correct or re-train Plaintiff on work performance issues, she offered excuses or shifted blame to others.

Defendants also present evidence that Plaintiff had a negative attitude and poor customer service skills. The record is replete with testimony of subordinates and co-workers describing Plaintiff as "abrasive," "unpleasant to work with," "critical," having a "condescending attitude,"[39] "a bully," and "not a nice person to

---

[39]Rec. Doc. No. 9-5 & 9-6.

work with."[40]   The Defendants also contend on several occasions, contractors were forced to contact Salter or Heistand because Plaintiff would not return their phone calls or e-mails. Defendants contend invoices were sometimes not paid until months after submission.  In particular, one patient's family contacted a subordinate in the Fiscal Department because they did not want to speak to the Plaintiff who they claim had been rude and unprofessional.[41]

In her opposition, the Plaintiff clearly disagrees with and attempts to explain many of the Defendants' arguments about her work performance.  She contends she never violated HIPAA policy and that the Defendants have failed to specify what specific provisions she violated.  Plaintiff argues the Defendants did not have a HIPAA policy in place; however, the record reflects that she received HIPAA compliance training twice.[42]  Furthermore, the Defendants did not need to have a "HIPAA policy" because HIPAA is federal law with which Plaintiff was bound to comply given her position and for which she clearly attended training provided by the Defendants.

In response to several of Defendants' allegations, Plaintiff claims other employees or her subordinates were at fault. Plaintiff also claims she addressed her staff's needs to the best

---

[40]Rec. Doc. No.

[41]Rec. Doc. No. 9-6.

[42]Rec. Doc. No. 9-22.

of her ability and held meetings to discuss problems and procedures. Finally, Plaintiff contends she did use her computer for personal reasons during breaks and lunch periods, but that the Defendants had no policy or procedure which prevented such conduct.

It is obvious that there are considerable facts in this case which Plaintiff and the Defendants dispute. However, the law is clear that "[t]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[43]  The Court finds the factual disputes herein present no genuine issues of material fact relevant to deciding the summary judgment motions.

The Court also finds that Plaintiff's attempted explanations for the Defendants' allegations do not show a discriminatory pretext for the employment actions taken against her. The Court notes that "Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus."[44]  In fact, "[a]n employer can make an incorrect employment decision; if based on a good faith belief with no discriminatory influences, then the court

---

[43] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original).

[44] *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997).

will not try the validity of the reason."[45]   In this case, the Defendants have presented a multitude of legitimate, non-discriminatory reasons for Plaintiff's disciplinary actions, suspension, and termination.   The Court will not second-guess the correctness of each individual decision.   Plaintiff has failed to present summary judgment evidence that these reasons are a pretext for discrimination.

### 4.   Emotional Distress

Plaintiff has asserted a state law claim for emotional distress.   To prove intentional infliction of emotional distress under Louisiana law, a plaintiff "must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered ... was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[46]   For a defendant's conduct to satisfy the first prong, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and intolerable in a

---

[45]*Jones v. Overnite Transp. Co.*, 212 Fed. Appx. 268, 275, 2006 WL 3627148, *5 (5th Cir. Dec. 13, 2006), citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

[46]*White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir. 1994).

civilized community."[47]   As for the third prong, "the acts must be intentional in the sense that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[48]

Plaintiff has alleged that on one occasion, Heistand called her into an office, yelled at her, put his hand in her face and spat in her face, and referred to her a few times as "black bitch." Plaintiff also claims she was not allowed to discipline her subordinates but was held responsible for their deficiencies.  She further claims that "Information Sheets" criticizing her work performance were prepared during her absence and presented to her upon return from vacation.  Also, Plaintiff contends her work schedule was changed after attempting to make a white subordinate follow procedure.

The Defendants cite two Louisiana cases where far more egregious behavior was held insufficient to constitute extreme and outrageous behavior.[49]  Plaintiff failed to address or distinguish

---

[47]*Id.* at 1209.

[48]*Givs v. City of Eunice*, 512 F.Supp.2d 522, 548 (W.D. La. 2007), citing *White*, 585 So.2d at 1208.

[49]*See, Stewart v. Parish of Jefferson*, 95-407 (La. App. 5 Cir. 1/30/96), 668 So.2d 1292 (court held two years of harassment by supervisor who questioned employee's personal life, increased employee's workload, and pressured employee into accepting demotion resulting in employee's termination did not constitute extreme and outrageous

these cases in her opposition and failed to present any jurisprudence which would support an emotional distress claim under the facts of this case.  It is clear that the conduct complained of does not rise to the level of extreme and outrageous required under the law.

Plaintiff also claims she requested FMLA leave for "severe stress with insomnia, anorexia and weight loss; worsening of hypertension; dyspepsia."[50] However, the family practitioner who completed this form on Plaintiff's behalf does not attribute the causation of these symptoms to her job.  Plaintiff makes the conclusory statement that she did not suffer these conditions prior to working at the Home or after leaving the Home; therefore, it must follow that these conditions were caused by her working at the Home.  This is insufficient evidence as a matter of law.  Further, as Defendants point out, Plaintiff has failed to disclose a medical expert who could possibly testify as to the cause of her medical condition.  Plaintiff's own self-serving deposition testimony that she believes her job caused these conditions cannot prove her claim of emotional distress.

Plaintiff has failed to present any evidence to satisfy the

---

behavior); *Beaudoin v. Hartford Acc & Indem. Co.*, 594 So.2d 1049 (La. App. 3 Cir. 1992)(court held employee subjected to eight months verbal abuse by supervisor, including shouting, cursing, name-calling, anti-women comments, and false accusations of mistakes, did not rise to the level of extreme and outrageous).

[50]Rec. Doc. No. 19-17, p. 4.

elements of the *White* test.   The record does not reflect that the Defendants' alleged conduct was extreme and outrageous, or in any way intended to inflict severe emotional distress, or made knowing that severe emotional distress would be likely to result. Plaintiff has not established that she has in fact suffered severe emotional distress and has no medical expert to prove such a claim. Plaintiff's emotional distress claim fails as a matter of law, and Defendants are entitled to summary judgment on this claim.

## III. Conclusion

For the reasons set forth above:

The Defendants' motions for partial summary judgment[51] are granted.   Plaintiff's claims are dismissed with prejudice.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

Baton Rouge, Louisiana, April 18, 2013.

JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[51]Rec. Doc. Nos. 7 & 9.